## LOONEY v. POPE.

(Court of Civil Appeals of Texas. El Paso. May 16, 1912.)

1. GARNISHMENT (§ 42*)—LIABILITY OF GARNISHEE — PURCHASE PRICE OF LAND — CLOUDS ON TITLE.

The existence of judgments against vendors of land will not excuse the vendee from liability in garnishment proceedings for the purchase price, where there is no showing that such judgments have been properly recorded and indexed, and are therefore clouds on the title.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 83–88; Dec. Dig. § 42.*]

2. GARNISHMENT (§ 42*)—LIABILITY OF GARNISHEE — PURCHASE PRICE OF LAND — CLOUDS ON TITLE.

The existence of judgments against vendors of land as clouds on the title of a vendee will not excuse such vendee from liability as a garnishee, where his contract of purchase did not make the removal of such clouds or execution of a bond, conditioned that the removal should be at the expense of the vendors, or one of them, a condition precedent to the liability of the vendee to pay for the land.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 83–88; Dec. Dig. § 42.*]

3. GARNISHMENT (§ 209*) — PROCEEDINGS — PARTIES.

In garnishment proceedings, the garnishee is entitled to have all claimants to the garnished fund brought before the court and required to interplead, to preclude the possibility of his being compelled to make double payment, so that where the vendors of land, a part of the purchase price of which was garnished in the hands of the vendee, and others who claimed parts of the fund, were not parties to the proceeding, a judgment against the garnishee was of no effect.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 401; Dec. Dig. § 209.*]

4. JUDGMENT (§ 251*)—SUPPORT IN PLEADINGS.

Where the vendors of land, a part of the purchase price of which had been garnished in the hands of the vendee, were not parties to the proceeding, and had consequently filed no interpleaders therein, a part of the judgment against the garnishee to the effect that his land should be free from any lien or incumbrance by virtue of the judgment against such vendors, upon which the garnishment was sued out, was beyond the scope of the pleadings, and of no effect.

[Ed. Note.—For other cases. see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

Appeal from District Court, Reeves County; S. J. Isaacs, Judge.

Garnishment proceedings by T. C. Pope against B. F. Looney. From a judgment against the garnishee, he appeals. Reversed and remanded.

B. F. Looney, of Greenville, and Hudson & Canon, of Pecos, for appellant. J. W. Parker and Ben Randals, both of Pecos, for appellee.

HIGGINS, J. On December 3, 1909, Pope recovered a judgment against Campbell Bros., a firm composed of Mack Campbell and Charlie Campbell, and against the individual members thereof, in the sum of $936.32, and upon which there was due the sum of $1,090.50 upon the date of the issuance of the writ of garnishment herein. On September 27, 1911, a writ of garnishment upon said judgment was issued and served upon appellant on September 28, 1911. In response to the writ answer was filed reading as follows:

"(1) The garnishee has not in his possession any effects of either Charlie Campbell or Mack Campbell or the firm of Campbell Bros., and he had not when the writ of garnishment was served on him herein. That there are no other person or persons, within the knowledge of affiant, who are indebted to the said Charlie Campbell, Mack Campbell, Campbell Bros.,' or either of them or have effects belonging to them or either of them in their possession.

"(2) That, as to whether or not this affiant is indebted to either Charlie Campbell, Mack Campbell, or Campbell Bros. in any sum or was indebted when the writ of garnishment was served on him in this cause, he shows to the court that on March 4, 1909, he contracted to purchase from Charlie Campbell and Mack Campbell four sections (640 acres each) of land situated in Reeves county, Tex., to wit, section 16, block 55, township 5, T. & P. Ry. Co. land, section 24,

block 55, township 5, T. & P. Ry. Co. land, section 26, block 55, township 5, T. & P. Ry. Co. land, and section 44, block 57, public school land, and agreed to pay them for the same the sum of $3,150. The titles to these lands were not all at the time in either Charlie or Mack Campbell, but affiant is informed and shows: That the title to sections 16 and 24, block 55, above mentioned, was in F. W. Hunnicutt. That the title to section 44, block 57, was in J. L. Neel, and the title to section 26, block 55, was. in Charlie (whose initials are C. J.) Campbell. The said lands had been previously purchased from the state, being a part of the public school lands, and had not been occupied for the three years required by law, and the same could not be then conveyed, but a bond for title was given to this affiant by the parties, said bond being executed in the name of Mack Campbell as principal, and C. J. Campbell, Cal Campbell, F. W. Hunnicutt, and J. L. Neel as sureties, but, in case the contract of purchase made by affiant was with both Mack and Charlie Campbell, that affiant knows nothing of the trades or arrangements between Hunnicutt, Neel, and the Campbells by virtue of which they subsequently, after the terms of occupancy had been completed and the law had been complied with, executed deed of conveyance to affiant, but he shows that in due time, after said contract of purchase was entered into and by December 26, 1910, all of said land had been conveyed to affiant by deeds of conveyance executed by the respective parties who held title thereto as above mentioned, and that, prior to the service of the writ of garnishment herein, affiant had paid for all of said lands to Charlie and Mack Campbell and to their order, except the sum of $787.50 of the principal, and $47.-25, one year's interest thereon at 6 per cent. per annum, making the sum due and owing by affiant on said land on June 17, 1911, the sum of $834.75. That said money was claimed by Charlie (C. J.) Campbell, but affiant does not know by virtue of what facts or trade the said Mack Campbell or Campbell Bros. had parted with his or their interest thereon to C. J. Campbell. Affiant shows, further: That on January 12, 1910, there was filed for record, and on the 13th of said month there was recorded in the judgment abstract records of Reeves county, Tex., what purports to be an abstract of judgment for $936.32 besides $55.55 costs of suit, rendered by the district court of Reeves county, Tex., on December 3, 1909, in favor of T. C. Pope against Campbell Bros., a firm composed of Mack Campbell and Charlie Campbell, and against the individual members of said firm, being the judgment by virtue of which the writ of garnishment in this case was issued, and also on the ——— day of ———, 19——, there was recorded in the judgment abstract records of Reeves county, Tex., book 1, p. 150, what purports

to be an abstract of judgment rendered in the justice court, precinct No. 1, of Comanche county, Tex., on the ——— day of December, 1909, in favor of H. E. Chealey and L. A. Main against M. E., J. W., and Mack Campbell for the sum of $228.03, besides $6.45 cost. That affiant believed and insisted that these judgment abstracts as recorded cast a cloud on the title to his said land contracted for and purchased as above stated, and he insisted that before he make final payment for the lands that the cloud be removed from said title by either procuring releases or by a suit to remove the same by judgment of a court of proper jurisdiction and affiant refused to pay the balance due as mentioned above until his said lands were in some way mentioned above relieved from said clouds. Affiant shows that J. F. McKenzie, an attorney at law who resided at that time in Pecos, Tex., in Reeves county, in the negotiations and correspondence that took place between affiant and Charlie (C. J.) Campbell, who claimed the fund, acted as agent for both parties, that is to say, McKenzie communicated to affiant the requests and proposals of Campbell and affiant in turn communicated to Campbell through the said McKenzie; that is to say, the said Campbell, through McKenzie, in order to induce affiant to pay over the said sum of $834.75, proposed to affiant to execute a good and solvent bond with proper sureties guaranteeing that affiant's title would be cleared from the clouds above mentioned, and that the said Campbell would, if necessary, prosecute a suit at his own expense in the name of affiant against the proper parties to cancel and remove the said clouds from his title; that affiant accepted the proposition, thus communicated through the said McKenzie, and on June 17, 1911, he remitted through the said McKenzie the sum of $834.-75, being the balance due by affiant for said lands together with accrued interest at that date, the same to be paid by the said McKenzie only on condition that the bond aforesaid was executed, conditioned that affiant's title to said lands were cleared up at the expense of the said Campbell; that said bond, so affiant is informed, has never been executed, and the said sum of money has never been paid out, but is held by the said McKenzie, who at this time is a resident citizen of El Paso county, Tex.

"Affiant shows further that long prior to the service of the writ of garnishment herein he was informed that Charlie (C. J.) Campbell, who claimed to own this money, on January 3, 1911, assigned to the Pecos. Valley Bank of Pecos, Tex., the sum of $400 of this money, with interest from said date on said amount at ——— per cent., and on being presented on February 9, 1911, by said bank with an order executed by Charley (C. J.) Campbell, this affiant accepted the same on said date, and agreed to pay said sum to the bank out of the balance due as above

mentioned, subject, however, to and conditioned upon the fact that the said Campbells would clear up the cloud from affiant's title to said lands, and affiant is informed that the said bank is a copartnership and composed, among others, of the following copartners, to wit: W. D. Cowan, F. W. Johnson, J. G. Love, and J. Y. Leavell—all of whom are resident citizens of Reeves county, Tex. The said bank is claiming to own the said fund to the extent of $400 and interest from January 3, 1911, but affiant is not advised as to the rate of interest. Affiant shows, further, since he was served with the writ of garnishment herein he has been informed that prior to the time he was served the Campbells or Charlie (C. J.) Campbell assigned and transferred to G. N. Gentry, a resident citizen of Reeves county, Tex., the remainder of the said funds left after paying the expenses of clearing affiant's title as above mentioned, and after paying the amount thereof previously assigned to the Pecos Valley Bank as above mentioned.

"Garnishee therefore prays that Mack Campbell, Charlie (C. J.) Campbell, resident citizens of Reeves county, Tex., the Pecos Valley Bank, G. N. Gentry, and J. F. McKenzie be made parties and cited as the law requires to appear and answer herein, and that this court or the court of proper jurisdiction of Hunt county, Tex., in case affiant's answer is controverted by the plaintiff or any other party, cause the said parties to interplead and on final hearing, garnishee prays:

"(1) That no judgment for any sum in favor of any party should be rendered against him under the facts, circumstances, and conditions until his title has been, in accordance with the agreement, cleared up and the said judgment liens removed as clouds from his title or until he is protected by a good and solvent bond conditioned for that purpose, and, if necessary, that this case be postponed or continued from time to time until affiant is fully protected and his title cleared.

"(2) That at all events the court adjudicates the question as to whom the fund belongs, and, if it should be adjudged that garnishee is to pay to any person any sum, then garnishee prays that he be protected from the payment of any interest, in that on the 17th day of June, 1911, he made the remittance aforesaid to be paid as herein alleged and the fact that the money was not paid was no fault of this affiant, that he has been deprived of the use of same since the date mentioned; and, further, affiant prays that he be fully protected from a double recovery, that the court adjudicate and fix the interest and rights of the parties, that a reasonable attorney's fee be allowed garnishee for answering herein, that he recover his costs and for such other and further relief general and special as he may be entitled to under the facts at law or in equity."

The answer was not controverted in any way, and, the cause coming on for trial, judgment was rendered upon the answer of the garnishee. The judgment, omitting formal parts, reads as follows:

"It is therefore ordered, adjudged, and decreed by the court that the plaintiff do have and recover of and from the said garnishee, B. F. Looney, said sum of $398.12, for which let execution issue in favor of said plaintiff against said garnishee. And, it further appearing to the court that said garnishee has employed an attorney to file his said answer and promised to pay said attorney the sum of $25, it is further ordered by the court that said garnishee do have and recover of and from the plaintiff, T. C. Pope, the sum of $25. It is further ordered, adjudged, and decreed by the court that, when said garnishee shall pay the judgment herein rendered ($398.12), the land and premises of the said garnishee, B. F. Looney, described in his answer, to wit: Section 16, block 55, township 5, T. & P. Ry. Co., section 24, block 55, township 5, T. & P. Ry. Co., section 26, block 55, township 5, T. & P. Ry. Co., section 44, block 57, public school, in Reeves county, be and the same is free from any lien or other incumbrance in favor of said Pope by reason of said judgment in the case of T. C. Pope v. Charley Campbell & Mack Campbell, and any lien upon said land, or cloud upon the title thereto by virtue of said judgment, the recording or abstracting thereof, is hereby removed and held for naught. It is further ordered by the court that the purchase money owed by said garnishee to Campbell Bros., a firm composed of Charley Campbell and Mack Campbell, the original defendants in case of T. C. Pope v. Campbell Bros., is hereby declared by the court to be paid off and satisfied to the extent of $398.12. It is further ordered by the court that the plaintiff, T. C. Pope, recover of said Campbell Bros. his cost in this behalf expended, including said $25, attorney's fee herein rendered against said plaintiff, T. C. Pope, in behalf of said garnishee."

[1, 2] From this judgment Looney has appealed, and error is first assigned to the refusal of the court to render a judgment in favor of the garnishee upon said answer, the contention being that, the answer not being controverted, the facts therein stated are assumed to be true, and upon the undisputed facts it appears that the obligation of Looney to pay the balance of the money due by him upon the contract of purchase referred to in his answer was dependent upon Charlie Campbell having first removed the clouds cast upon the land described in the answer by the judgments abstracted against it either by procuring proper releases or by judgments canceling and removing the clouds cast by the judgments, or by executing the bond re-

ferred to in his answer, for the protection of appellant. If the answer of the garnishee can properly be construed as showing a contingent liability for the payment of the moneys due upon the contract of purchase, or if it can be construed as showing liability upon condition precedent, judgment should have been rendered in the appellant's favor because a fund or debt is not subject to garnishment which is subject to any contingency or condition precedent before the liability arises upon which payment of the debt can be enforced. We do not think, however, that appellant's answer can be so construed. It is not averred that the judgments cast a cloud upon the title to the land, nor are any facts averred by which the court could determine that they were clouds upon the title, but appellant contented himself with the allegation that he believed and insisted that the judgments were clouds. It is not averred that they were properly recorded and indexed. Furthermore, if the answer disclosed that they in fact were clouds upon the title to the land, yet no facts are averred showing any right upon the part of Looney to insist upon their removal or the execution of the bond referred to in his answer as a condition precedent to liability to pay for the land. The terms of the contract of purchase for the land are not shown, and it may have been purchased by quitclaim deed. If, as a matter of fact, the contract of purchase was such as to impose upon the Campbells no obligation to protect against these judgments, then the mere fact that Charlie Campbell thereafter voluntarily agreed that he would give the bond did not impose upon him any obligation to give the same, as he could have repudiated the agreement to give the bond and insisted upon payment. We therefore hold that the court did not err in refusing to render judgment for the appellant upon his answer, but the remaining assignments, which complain of the failure of the court to make Mack Campbell, Charlie Campbell, the Pecos Valley Bank, G. N. Gentry, and J. F. McKenzie parties to the garnishment proceeding and requiring them to interplead, was clearly error requiring a reversal of the judgment.

Appellee has filed no brief, and we are therefore not advised of the theory upon which the lower court acted in failing to pursue the course which we have indicated should have been pursued. We deem it unnecessary to discuss at length the reasons why this course should have been pursued. It is well settled, however, that in garnishment proceedings the garnishee is clearly entitled, under our procedure, to have all claimants to the garnished fund brought before the court and an interpleader required so that their conflicting claims may be there adjusted and determined, and the garnishee protected from future litigation or risk of being required to make a double payment of the debt upon which the garnishment is based. Iglehart v. Moore, 21 Tex. 501; Smith v. Railway Co., 39 S. W. 969; Kelley Grain Co. v. English, 34 S. W. 651; Miller v. Goodman, 15 Tex. Civ. App. 244, 40 S. W. 743.

[3, 4] It will be noted that one of the judgments which appellant contended was a cloud upon the title to his land is the judgment upon which this garnishment proceeding is based, and in the judgment which is herein rendered the court undertook apparently to protect against the lien of this judgment by the provision in the judgment that the appellant's land be freed from any lien or incumbrance by virtue of said judgment, but this part of the judgment is unsupported by and beyond the scope of the pleadings and ineffective for that reason. Mack Campbell should have been required to interplead so that no question could thereafter arise as to the validity of the transfer asserted by Charlie Campbell of Looney's debt to Mack Campbell under the contract of purchase, the Pecos Valley Bank should be before the court, so that their rights, if any, can be finally and authoritatively determined. This is also true of Gentry, and Charlie Campbell should be required to interplead in the garnishment proceeding so that he would be thereafter precluded from questioning the correctness of a possible judgment which might be rendered in favor of the bank or Gentry, and J. F. McKenzie should be brought before the court as the trustee and holder of the garnished fund. With all these parties before the court, the conflicting claims and rights of all of the parties may be fully and finally determined and adjudicated, and this is a substantial right to which the garnishee is entitled, and the court's failure to have them brought before it and his action in rendering judgment disposing of the fund, without them being before the court, was erroneous.

The cause is therefore reversed and remanded for further proceedings in accordance with this opinion.

McKENZIE, J., disqualified, and not sitting.