HAUGHTON ELEVATOR & MACHINE CO. *v.* DETROIT
CANDY CO.

FOREIGN CORPORATIONS—NONPAYMENT OF FRANCHISE FEE—EFFECT
—CONTRACTS.

> A contract by a foreign corporation for the sale and installa-
> tion of an elevator and the making of repairs upon another
> elevator, construed as a whole, is a contract for the transac-
> tion of business within the State; and plaintiff not having
> paid the franchise fee required by Act No. 34, Pub. Acts 1903,
> is precluded from maintaining an action for a breach thereof.[1]

Error to Wayne; Rohnert, J. Submitted January 20,
1909. (Docket No. 158.) Decided March 16, 1909.

Case by the Haughton Elevator & Machine Company
against the Detroit Candy Company, Limited, for breach
of a contract for the installation and repair of certain ele-
vators. There was judgment for defendant on a verdict
directed by the court, and plaintiff brings error. Af-
firmed.

*May & Dingeman,* for appellant.

*Merriam, Yerkes & Simons,* for appellee.

Plaintiff is a foreign corporation, with its plant and of-
fices at Toledo, Ohio. Its business is the manufacture,
construction, and installation of freight and passenger
elevators. It maintains no office in this State. The de-
fendant is a partnership association, limited, under the
laws of Michigan, and doing business in Detroit.

On March 27, 1907, defendant accepted a proposition
made to it by plaintiff on March 7th. The acceptance
made a complete and binding contract. By it plaintiff

---

[1] As to what constitutes " doing business" within the State, by
a foreign corporation, see note to *Cone Export & Com. Co.* v.
*Poole* (S. C.), 24 L. R. A. 295.

agreed "to furnish and erect in defendant's building in Detroit, one belt-connected electric freight elevator in accordance with the following specifications." It is unnecessary to state the specifications any further than to say that defendant agreed to furnish in place all necessary supports, guide posts, and sheave beams, to do all cutting of floors, walls, and masonry, to provide clear and unobstructed room for the placing of elevator with belongings and attachments, and to allow plaintiff the unobstructed use of space while installing elevator. The contract also provided:

"For the old elevator, we are to furnish and erect parts as follows: Guide posts, weight guides, guide strips, overhead sheave beams. To cut platform to fit hatch 5 ft. 6 in. wide by 4 ft. 2 in. deep, with wire wainscoting 6 ft. high on three sides. Repair and install three automatic gates; using your motor, controller and reversing switch and erect elevator ready for your wires and cut out switch, all in good working order. You to prepare hatchways and do other work same as specified for new elevator in this contract."

The day following the making of this contract, defendant telegraphed plaintiff canceling it. This suit is brought to recover damages for breach of contract. The court directed a verdict for the defendant, for the reason that the plaintiff, a foreign corporation, was doing business in Michigan contrary to Act No. 34 of the Public Acts of 1903, which forbids any foreign corporation to do business in Michigan "unless it shall first have filed and recorded in the office of the secretary of State a certified copy of its charter or articles of incorporation." The defendant rested its case without producing any testimony.

It appears from the evidence on the part of the plaintiff that it has a capital stock of $25,000; that it does not manufacture the motor and the controller, or the ornamental parts, or the cables or the leather belts, but buys them. It does its assembling and shipping in and from Toledo, and sends its elevator to the place ordered. It would have

taken about two weeks to put in the elevator, and about a week to do the repair work. The men employed would have been a millwright and two helpers. Its manager further testified that plaintiff might hire labor in Detroit if it needed more than it could send from Toledo; that it had done so occasionally; and that it might be compelled to buy a few things in Detroit, such as nails, bolts, hinges, and lumber.

" We were to do the repair work here in Detroit on the Gardner elevator. We were not connected with that elevator company. We were perfectly willing to make the changes in that elevator, whatever changes were necessary, not whatever they required. We should make such changes as were necessary. We were to do that work in Detroit and with the labor here. Also to make use of any stuff that they might have, and take back or buy of them or credit them for it."

Grant, J. ( *after stating the facts* ). In determining whether the contract sued upon described a business to be carried on within this State, and therefore within the prohibition of the statute, or whether it involved the business of interstate commerce, the contract must be construed as a whole. It is indivisible. Plaintiff agreed to install a new elevator, which, under its evidence, would require about two weeks to install after the elevator and the necessary appliances were shipped to Detroit. By the same contract it also agreed to repair another elevator, which would take about a week's time. One price was made for the entire work.

If this contract were merely for the installation of a new elevator, plaintiff could urge with much reason that it was an act of interstate commerce, and did not fall within the cases of *Hastings Industrial Co.* v. *Moran,* 143 Mich. 679, and *Pittsburgh Construction Co.* v. *Railroad Co.,* 154 Fed. 929, 83 C. C. A. 501 (11 L. R. A. [N. S.] 1145), but within *Milan Milling Co.* v. *Gorten,* 93 Tenn. 590 (26 L. R. A. 135), and other similar cases. But repairs to buildings and machinery are in no

sense interstate commerce. That part of the contract was to be performed wholly in Michigan. It can make no difference whether in doing such business the contractor hires his help in the State or from without, or whether he buys what articles he needs for repairs in the State or without. It is local business, and corporations who undertake such work, even in a single transaction, come within the prohibition of the statute. See *Rough* v. *Breitung*, 117 Mich. 48.

Judgment affirmed.

BLAIR, C. J., and MONTGOMERY, MOORE, and MC-ALVAY, JJ., concurred.